IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL No. 09-25 |
| v. | ) | Erie Division |
| | ) | |
| CHAD ZACHARY HOWER | ) | |

## MOTION OF PETER ZACHARY CHEVOZEROV, FORMALLY CHAD ZACHARY HOWER TO SET A DATE CERTAIN FOR TRIAL, ORDER EXTRADITION OR IN THE ALTERNATIVE DISMISS THE INDICTMENT

AND now comes the Defendant Chad Zachary Hower (now Peter Zachary Chevozerov), by and through his attorneys, Alexander H. Lindsay, Jr. and The Lindsay Law Firm, P.C. requesting this court to set a date certain for trial, order extradition of the Defendant, or in the alternative dismiss the indictment.

## I.  The Indictment

1.      The Defendant was indicted by a federal grand jury in the Western District of Pennsylvania on May 12, 2009.  A copy of the Indictment is attached as Exhibit "A".

2.      The Indictment is a one count Indictment for an alleged violation of 18 U.S.C. §1204, International Parental Kidnapping.   A copy of the Indictment Memorandum is attached as Exhibit "B".

## II.   The Defendant's Name Change

3.      The Defendant is currently a resident of Saint Christopher Island, commonly referred to as St. Kitts (hereinafter "St. Kitts").   St. Kitts is an island between the Caribbean Sea and the Atlantic Ocean.

4.      After remarrying, the Defendant Chad Hower took his wife's name of Chevozerov and in 2008 petitioned the Court for a change of first name as well due to threats made against him.

5.      A copy of the recording of the Register of Deeds for St. Kitts is attached as Exhibit "C" evidencing the change of the Defendant's name from Chad Zachary Hower to  Peter Zachary Chevozerov.

6.      For the purposes of simplicity, the Defendant will be referred to in this petition by his original name, Chad Zachary Hower.

## III.   Background Information

7.      Chad Z. Hower and Nancy Sue Oberlander are the parents of Aarys Charles Oberlander-Hower, born June 5, 1996 in Tennessee.

8.      Chad Hower and Nancy Sue Oberlander divorced in Tennessee on April 22, 2002.

9.      Chad Hower and Nancy Sue Oberlander entered into a parenting plan for Aarys on that same date in which the parties agreed that Tennessee would

retain jurisdiction of matters associated with the divorce, including any controversy that might arise between the parties.

10.     In 2004, Nancy Sue Oberlander moved from Tennessee to Pennsylvania to live in Venango County with son Aarys Charles Oberlander-Hower, in violation of a Tennessee Order forbidding her from doing so.

11.     On December 22, 2004, the Court of Common Pleas of Venango County awarded custody of Aarys Charles Oberlander-Hower to Defendant Chad Hower, and the matter was referred to the Tennessee Court for disposition.

12.     On July 12, 2005, the Court of Common Pleas of Venango County issued an Order and Opinion acknowledging there is a "question regarding this court's jurisdiction over Mr. Hower" and that the "Tennessee support order remains in effect in this case."

13.     On August 17, 2005, the Tennessee Court issued an Opinion admonishing Nancy Sue Oberlander for failing to respond and ignoring its Orders, including Nancy Sue Oberlander taking Aarys Charles Oberlander-Hower from Tennessee to Pennsylvania four days after receiving an Order from the Tennessee Court prohibiting her from doing so.

14.     On August 18, 2005 the Tennessee Court issued an Order granting Chad Hower custody of Aarys Charles Oberlander-Hower and providing Nancy Sue Oberlander with co-parenting time.

15.     On August 19, 2005, the Court of Common Pleas of Venango County issued an Order deferring jurisdiction to the Tennessee Court.

16.     In the August 19, 2005 Findings of the Court of Common Pleas of Venango County, the Court stated it is up to the judge in Tennessee to determine whether jurisdiction is retained in Tennessee.

17.     On October 11, 2005, the judge of the Tennessee Court concluded that it had jurisdiction until the child reached the age of 18. (The child turned 18 on June 5, 2014).

18.     Despite the foregoing, on August 30, 2006 the Court of Common Pleas of Venango County issued an Order for the first time claiming jurisdiction of the custody case.

19.     In the August 30, 2006 Order, the Court of Common Pleas of Venango County Ordered that the Tennessee Court's October 11, 2005 order be given full faith and credit. Pursuant to that October 11, 2005 Order, Nancy Sue Oberlander was to give custody of the child and transport the child to the Chad Hower on August 31, 2006 by 4:30 p.m.

20.     The Court then issued an Opinion on September 5, 2006 in response to Chad Hower's objections to the court assuming jurisdiction in which the Court stated "[a]fter careful consideration, this court is assuming jurisdiction."

21.     On or about September 2, 2006, Nancy Sue Oberlander returned Aarys Charles Oberlander-Hower to Chad Hower after the son spent the summer with his mother so that Aarys Charles Oberlander-Hower could return to his home and school in Cyprus with Chad Hower.

22.     Pursuant to the August 30, 2006 Order the Court scheduled an evidentiary hearing for November 6, 2006.

23.     Chad Hower, who had moved out of the country in 2001 due to his job with Microsoft, appealed the August 30, 2006 Order and having moved out of the United States, did not appear at hearings scheduled by the Venango County Court of Common Pleas on November 6, 2006 and December 27, 2006, however his counsel was present.

24.     The Appeal of the Venango County Order sustaining jurisdiction was quashed by the Pennsylvania Superior Court because the order was considered interlocutory and unappealable pursuant to *Nepo Associates, Inc. v. Gloria Del Outreach Corp.*, 700 A.2d 1017 (Pa. Super. 1997) and *Okkerse v. Howe*, 556 A.2d 827 (Pa. Super. 1989).

25.     A thorough review of the root decision in this case by the Honorable William White, wherein jurisdiction in the dispute between Chad Hower and Nancy Sue Oberlander was taken from the State of Tennessee to the Commonwealth of Pennsylvania upon review will be shown to be rife with factual

and legal errors.  Significantly, the trial court stated Aarys was born in

Pennsylvania but he was not.   Aarys was born in Tennessee.   This mistaken ruling

was used as a basis for taking jurisdiction.   The relevant Pleadings relating to the

Venango County case are attached as Exhibit "D".

26.    On April 1, 2008, a Bench Warrant was issued against Chad Hower

charging him with contempt in failing to appear for the December 27, 2006

hearing.

27.    Chad Hower has not resided in the United States since 2001.

28.    Aarys Charles Oberlander-Hower, now age 25, also resides in St.

Kitts with his father, stepmother, and younger siblings.

29.    Nancy Sue Oberlander resides in Erie County, and it is believed that

she has not lived in Venango County since 2018.

30.    Nancy Sue Oberlander visited son Aarys Oberlander-Hower in 2009

in St. Kitts and was granted visitation for as long as she remained.

31.    However, since 2009, Nancy Sue Oberlander has made no effort to

contact son Aarys Oberlander-Hower despite having his address and phone number

other than a letter sent in 2021 after a Venango County court hearing.

32.    Nancy Sue Oberlander used the Contempt Order issued in Venango

County to obtain an Indictment against Chad Hower for International Parental

Kidnapping pursuant to 18 U.S. Code § 1204.

33.     The charges in the aforementioned indictment against Chad Hower are not supportable and in the event of a trial, the Defendant Chad Hower is confident of an acquittal.

34.     The aforementioned charges in the Indictment led to the Defendant Chad Hower being arrested and detained in prison in Bulgaria for 3 months in 2009 under an Interpol Red Notice for International Kidnapping.

35.     The charges against the Defendant in the Indictment, which the Defendant believes to be false have negatively impacted every aspect of his life as will be hereinafter noted.

### IV.  Chad Hower's Medical Issues

36.     Attached as Exhibit "E" is a note from Dr. Norgen Wilson, M.B.B.S, M.D.   According to this report:

   a.   Peter Zachary Chevozerov (Chad Zachary Hower) has a medical history of:

   i.     Irritable Bowel Syndrome (IBS);

   ii.    Non-Alcoholic Fatty Liver Disease (NAFLD);

   iii.   Cholelethiasis;

   iv.    Hydronephrosis of the Left Kidney.

   b.   These illnesses culminated to provoke a series of painful crisis which continues to prove difficult to manage;

   c.   Mr. Chevozerov (Chad Hower) has continuously had several rounds of analgesics of varying classifications without much

success.   He has also had surgical intervention(s) but continues to form lithiasis in the kidneys;

    d.    It is recommended that Chad Hower seeks further specialized medical attention, with frequent follow-ups and observations;

    e.    Transportation to a medical facility with targeted medical treatments for him, including air ambulance support would be beneficial.

37.    Attached as Exhibit "F" is a report from Dr. Dwayne Thwaites, MD.

The significant portions of that report are as follows:

    a.    Mr. Peter Chevozerov (Chad Hower) has a history of kidney stones of unknown etiology.   He consistently makes stones, his urine PH is usually acidic but seem to have Renal Tubular Acidosis;

    b.    Mr. Chevozerov (Chad Hower) is consistently on Polycitro K to alkalize his urine but still developed multiple stones which he passes on occasion;

    c.    He recently passed larger stones;

    d.    His 24hr urine collection does not fit a particular pattern and was significant for hyper magnesium;

    e.    His blood was consistent with hyperuricemia;

    f.    They have been unable to get a stone analysis;

    g.    He has occasional stone crisis which is managed with fluids, pain medication and polycitro K.

38.    Chad Hower cannot leave St. Kitts to receive medical care in locations other than the United States because of the pending indictment and listing on Interpol Red Notice for Kidnapping.

39.     Chad Hower is unable to travel to receive adequate medical help dealing with the excruciating pain he suffers on a daily basis.

40.     Chad Hower is unable to work and earn money to provide for his family.

41.     Chad Hower has been unable to leave his house for long periods of time and is bedridden for many days.

42.     Chad Hower is forced to take prescription opioids and painkillers every day.

43.     Chad Hower is unable to leave St. Kitts and is unable to get adequate medical care with the limited medical resources in St. Kitts.

44.     As previously stated, Chad Hower, in order to be transported to the United States and stand trial would need an air ambulance to transport him.

45.     A lengthy pretrial detention in a prison facility prior to trial would make it impossible to provide him with adequate medical care and would likely result in his death.

## V.  Chad Hower's Current Inability to Travel to the United States

46.     Because of Chad Hower's medical conditions as aforesaid, he can only travel to the United States via air ambulance.

47.     Due to Chad Hower's medical conditions he has been unable to work and therefore lacks sufficient funds to pay for an air ambulance to the United States.

48.     If Chad Hower travels to the United States voluntarily he will likely be arrested upon his arrival and incarcerated for a substantial period of time awaiting trial in a prison which is not capable of dealing with his advanced and urgent medical needs.

49.     It is anticipated that if Chad Hower returns to the United States and he is scheduled for trial, it could take months or even years to bring the matter of trial due to the court backups as a result of COVID 19.

50.     Chad Hower has not lived in the United States since 2001.  Even if he is place under house arrest while awaiting trial, he has no place to live.   His family, including his children will not be able to move to the United States.   His wife does not have a United States Green Card and is not able to travel to the United States.

## VI.  Chad Hower's Willingness to Stand Trial

51.     The Defendant Chad Hower is more than willing to return to the United States and stand trial.

52.     Chad Hower is more than willing to submit to an extradition process wherein the government would transport him to this Court's venue via air ambulance and provide urgent medical care upon arrival.

53.     Chad Hower would be willing to participate in this process if he can go to trial immediately upon his arrival to the United States.

## VII.  Chad Hower's Proposal

54.     That this Court set this matter for a trial with a date certain.

55.     That Chad Hower submit to extradition to this venue by air ambulance at the government's expense.

56.     If the government is unwilling to transport Mr. Hower to the United States by air ambulance it is requested that this Court dismiss the Indictment against Chad Hower.

Respectfully submitted,

THE LINDSAY LAW FIRM, P.C.,


*s/ Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr.
Pa. I.D. 15088

110 East Diamond Street
Suite 301
Butler, PA  16001
Phone:  (724) 282-6600
michele@lindsaylawfirm.com