12/28/2004 TUE 15:36  FAX 814 432 3149 VENANGO CO JUDGES CHMBRS                    ☒001/001

CHAD ZACHARY HOWER          :    IN THE COURT OF COMMON PLEAS
                                 VENANGO COUNTY, PENNSLYVANIA
VS                          :

NANCY SUE OBERLANDER-HOWER  :    CIV: 1751 – 2004

### ORDER OF COURT

AND NOW, this 22nd day of December 2004, the Court has conducted a hearing in

this proceeding, and we have entered findings. It is hereby Ordered that legal and physical

custody of AARYS CHARLES OBERLANDER-HOWER, born June 5, 1996, is awarded to the

Petitioner, Chad Zachary Hower, and this matter is referred to the Chancery Court for

Knox County, Tennessee, for disposition. The Mother will forthwith relinquish physical

custody of Aary's to the Father, Chad Zachary Hower.

The Venango County Sheriff will accompany the Father to the place where the child

is and will assist the Father in securing physical custody of the child. The Father will assure

that the Mother is aware of the child's whereabouts, however, the issue of custody

exchange will be deferred to the Tennessee Court. The object in the Sheriff in carrying out

this Order is to transfer physical custody of the child from the Mother to the Father until

the Tennessee Chancery Court can resolve the custody issue.

BY THE COURT,

_____
H. WILLIAM WHITE, PRESIDENT JUDGE

Cc: Barbara Mountjoy Esquire
    Sheriff
    Chad Z. Hower
    Nancy Sue Oberlander-Hower
    HWW/mmm

**EXHIBIT** 

NANCY S. OBERLANDER,            : IN THE COURT OF COMMON PLEAS OF
      Plaintiff                   : VENANGO COUNTY, PENNSYLVANIA
                                :
vs.                            :
                                :
CHAD Z. HOWER,                 : D.R. NO. : 225-2005
      Defendant                   : CASE ID. NO. 978107320

## OPINION OF COURT

Before the court is the defendant's objection to the Notice of Registration of Order filed on May 25, 2005. We heard argument on this matter on July 1, 2005. After careful consideration, we intend to confirm the registration of the Knox County, Tennessee support order and deny the motion which contests the registration of said order.

The defendant contests the registration of the foreign order based on a lack of jurisdiction in the Venango County courts. Defendant argues that the Tennessee courts control the custody order and the support matter in this case. Defendant does not live, and has never lived, in Venango County. Counsel for the defendant contends that this matter is controlled by 23 Pa.C.S.A. §7201 and 7204. Counsel for the plaintiff contends that this matter is controlled by 23 Pa.C.S.A. §7205.

23 Pa.C.S.A. §7201 states as follows:

> In a proceeding to establish, enforce or modify a support order or to determine parentage, a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if any of the following apply:
>
> (1) The individual is personally served with a writ of summons, complaint or other appropriate pleading within this State.
> (2) The individual submits to the jurisdiction of this State by consent, by entering a general appearance or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.
> (3) The individual resided with the child in this State.
> (4) The individual resided in this State and provided prenatal



07/13/2005  14:55   8143363959                    LAW OFFICE                        PAGE  03
07/13/2005 WED  9:26  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                      ☒002/006

expenses or support for the child.

(5) The child resides in this State as a result of the acts or directives of the individual.

(6) The individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse.

(7) The individual acknowledged parentage of the child on a form filed with the department under section 5103 (relating to acknowledgment and claim of paternity).

(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

This section begins by stating that it applies to a proceeding to establish, enforce or modify a support order or to establish parentage. In the matter before us at this time, the court is not asked to do any of these things. Rather, we are being asked to register an order from another state. Therefore, this section does not apply at this time. We agree with defendant that if we were in a situation where we were being asked to establish, enforce or modify the support order, there would be a question regarding this court's jurisdiction over Mr. Hower. However, that is a matter that can be dealt with when the question presents itself. At this point, this section does not apply.

Counsel for the defendant also contends that 23 Pa.C.S.A. §7204 applies to this case. Section 7204 is entitled, "Simultaneous proceedings in another state." The statute then lists two subsections, (a) and (b), entitled "Permissible" and "Impermissible," respectively. Each subsection begins with the sentence, "A tribunal of this state [(a) may/(b) may not] exercise jurisdiction to establish a support order . . ." Clearly, this section applies to a situation where the court is being asked to establish a support order. Again, we are not asked to do that here. Rather, we are being asked to register a support order from another state. Therefore, 23 Pa.C.S.A. §7204 does not apply.

07/13/2005  14:55    8143363959              LAW OFFICE                    PAGE  04
07/13/2005 WED  9:26  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS          ☑003/006

The plaintiff contends that 23 Pa.C.S.A. §7305 is the applicable section. We agree. Most importantly, we find the comments to this section to be instructive. Section 7305 reads as follows:

> **(a) Extent.**—A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:
>
> (1) as long as this State remains the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued; or
>
> (2) until all of the parties who are individuals have filed written consent with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
>
> **(b) Restriction.**—A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to a law substantially similar to this part.
>
> **(c) Modification.**—If a child support order of this State is modified by a tribunal of another state pursuant to a law substantially similar to this part, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State and may only do the following:
>
> (1) Enforce the order that was modified as to amounts accruing before the modification.
>
> (2) Enforce nonmodifiable aspects of that order.
>
> (3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
>
> **(d) Faith and credit.**—A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to a law substantially similar to this part.
>
> **(e) Interim orders.**—A temporary support order issued ex parte or pending resolution of a jurisdictional conflict does not create continuing, exclusive jurisdiction in the issuing tribunal.
>
> **(f) Duration and modification of spousal support orders.**—A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a spousal support order

throughout the existence of the support obligation. A tribunal of this State may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state.

The comments to this section state, in relevant part, as follows:

The issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order--which in practical terms means that it may modify its order. The statute attempts to be even-handed-- the identity of the remaining party--obligor or obligee--does not matter. If the individual parties have left the issuing state but the child remains behind, continuing, exclusive jurisdiction remains with the issuing state.

The other side of the coin follows logically. Just as Subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also defines how jurisdiction to modify may be lost. That is, if all the relevant persons--the obligor, the individual obligee, and the child--have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that state have no reason to expend public funds on the process. Note, however, that the original order of the issuing tribunal remains valid and enforceable. That order is in effect not only in the issuing state and those states in which the order has been registered, but also may be registered and enforced in additional states even after the issuing state has lost its power to modify its order, see Sections 601-604 (Registration and Enforcement of Support Order), infra. The original order remains in effect until it is properly modified in accordance with the narrow terms of Sections 609-612 (Registration and Modification of Child Support Order), infra.

The issuing tribunal in the case before us is Tennessee. It is clear that none of the parties – the child, the obligee, or the obligor – reside in Tennessee. The father no longer resides in this country, the mother and child now reside in Pennsylvania. Thus, it appears that Tennessee no longer has jurisdiction to modify the support order as that state does not have an appropriate nexus with the parties or child. However, the order issued by Tennessee still remains valid and enforceable. The comments state, very clearly, that the order may be

registered and enforced in other states even after the issuing state has lost jurisdiction in the matter. Therefore, it is clear that the Tennessee support order remains in effect in this case. Furthermore, under 23 Pa.C.S.A. §7601, it is clear that the order can be registered and enforced in Pennsylvania.

We conclude that the statutes are clear with respect to their application to the case before us. 23 Pa.C.S.A. §7205 applies to situations like the one here. Furthermore, the comments to that section direct us to the statute relevant to registering a support order from a different state. Under the statutes, the proper step at this stage is to register the Tennessee support order in Pennsylvania. Therefore, the objection to the Registration is overruled.

BY THE COURT,

H. WILLIAM WHITE, President Judge

NANCY S. OBERLANDER,                    : IN THE COURT OF COMMON PLEAS OF
        Plaintiff                    : VENANGO COUNTY, PENNSYLVANIA
                                    :
vs.                    :
                                    :
CHAD Z. HOWER,                    : D.R. NO. : 225-2005
        Defendant                    : CASE ID. NO. 978107320

## ORDER OF COURT

AND NOW, THIS __12__ day of July, 2005, the Court has for consideration

defendant's objection to the Notice of Registration of Order. The objection is overruled.

BY THE COURT,

A. WILLIAM WHITE, President Judge

08/18/2005  11:38   8656377300          SHEPPEARD&SWANSON                    PAGE  05

1                      OPINION OF THE COURT

2              All right.  When this matter was heard on March the

3     14th of this year it came before this court because of what

4     the Court perceives to be not only a lack of cooperation on

5     the part of the mother, Ms. Oberlander, but what this court

6     construed and found is an outright attempt to hide this child

7     from his father.

8              Ms. Oberlander has ignored orders of this court.

9     She left the state of Tennessee with this child four days

10    after receiving an order from this court prohibiting her from

11    doing so.  She refused to respond to notices to appear before

12    this court.  And she has refused to appear here today.

13             Prior to March of this year, the father and this

14    child had to track her down, basically.  Well, I won't go page

15    by page, but this court noted in March that it found

16    specifically that the mother had no motive for keeping their

17    whereabouts secret.  That she refused without explanation to

18    give telephone numbers, addresses, e-mail addresses; any

19    information by which the father could contact his son.

20             And I will refer to page 14, where I said, "Based on

21    the record I have before me, this court would conclude that

22    she; Ms. Oberlander was far more likely to hide this child out

23    somewhere in the United States from the father, than it was

24    that the father would abscond with the child and keep him

25    overseas."  I pointed out that she ignored two court orders;

1    just flagrantly ignored them.  She concealed the whereabouts

2    of the child.

3         And the Court also noted that in that opinion that

4    if that pattern continued then the effect would be that there

5    would be absolutely no father-son relationship in this case.

6         I also pointed out on page 15 of the opinion that

7    the Court had two choices.  The Court could either let the

8    child go to Russia with his father and visit in the

9    summertime.  Or let the child -- I'm sorry, let me restate

10   that.  The choices were to let the child go to Russia and live

11   with his father and visit with the mother in the summertime.

12   Or let the child go to visit with his father in the summer and

13   spend the remainder of time with the mother.

14        I won't reiterate what I said in March about the

15   father having had the child for a number of months and having

16   him out of the country.  He still brought him back with no

17   reason to believe that there is any problem with the child

18   living with his father overseas and affording the mother an

19   opportunity to spend time with him in the summer.

20        The Court finds today that based on the evidence,

21   and of course, Ms. Oberlander is not here to present her side,

22   the Court can only conclude that this is a continuation of her

23   past behavior.  That she does not intend to recognize the

24   authority of this court.  She does not intend to recognize

25   the orders of this court.  She has made no attempt to comply

1   with them.

2          And the Court concludes that it is her intent to

3   continue to, if at all possible, secret this child from the

4   father; prevent any contact with the father.  And it is not

5   her intent to ever foster a relationship between this child

6   and his father.

7          She undoubtedly is in contempt of this court's

8   orders and probably has been on more than one occasion.  She's

9   not here to endure any punishment for contempt that this court

10  might choose to apply if she were present.  So it's sort of an

11  exercise in utility to talk much about the contempt

12  proceeding.

13          But it is well established in Tennessee law that the

14  failure of one parent to foster a relationship with the other

15  is a material change of circumstance.  We had material change

16  of circumstances in March with the change from home school to

17  private school, the move of the mother to Pennsylvania, and so

18  forth.  But this is just another continuing change; probably

19  wasn't a change between March and June or July or August

20  because that's exactly what she had been doing.

21          When we heard this case in March, I think, it's

22  abundantly clear in my review of the transcript of the

23  proceedings that this court found that not only was she not

24  fostering the relationship, she was doing everything she could

25  to prevent a relationship.  And this action since the March

1   hearing is just further evidence of that.

2          This court is convinced that this woman will never

3   adhere to the orders of any court that provides this man an

4   opportunity to spend time with his child.  The only remedy

5   that this court can fashion for these egregious acts on her

6   part is simply change the primary residential parent to Mr.

7   Hower.  Effective immediately.

8          Mr. Mynatt, if you will prepare the order.  And I

9   will go ahead and state on the record, if I were contacted by

10  a Pennsylvania court who was considering asserting home state

11  jurisdiction, I might consider that for some future activity

12  in this case.  But this court has ruled today.  I have not

13  been contacted by any court from another jurisdiction to

14  discuss whether this court should relinquish its continuing

15  jurisdiction in this case.  And I have no reason to suggest

16  that I should right now as of this moment.

17         So I'm changing the primary residential custodian to

18  Mr. Hower.  Effective immediately.  And if you will get the

19  order down, I will be happy to sign it so you can get it to

20  Pennsylvania and get it executed.

21         MR. MYNATT:  I will do that forthwith, Your

22  Honor.

23         THE COURT:  The cost of this cause will be

24  attached to Ms. Oberlander and include that in the judgement.

25                   (End of proceedings.)

08/18/2005  11:38    8656377300              SHEPPEARD&SWANSON                    PAGE  09

21

1                    REPORTER'S CERTIFICATE

2      STATE OF TENNESSEE          )

3      COUNTY OF KNOX              )

4          I, CHANZE WITCHER, Court Reporter and Notary Public in

5      and for the County of Knox, State of Tennessee at Large, do

6      hereby certify:

7          That I reported stenographically the proceedings held in

8      Chancery Court on the 12th day of August, 2005, in the matter

9      of Nancy Sue Oberlander v Chad Zachary Hower, 152370-2; that

10     said proceedings in connection with the hearing were reduced

11     to typewritten form by me; and that the foregoing transcript

12     is a true and accurate record of said proceedings to the best

13     of my knowledge, skills, and ability.

14         I further certify that I am not kin to any of the parties

15     involved therein nor their counsel, and I have no financial or

16     otherwise interest in the outcome of these proceedings

17     whatsoever.

18         This the 17th day of August, 2005.

19

20                          _____

21                          CHANZE WITCHER
                            Court Reporter and Notary Public

22

23     My Commission Expires:    04/08/09

24

25

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

NANCY SUE OBERLANDER-HOWER,
           Plaintiff,

v.

CHAD ZACHARY HOWER,
           Defendant.

**ENTERED**

AUG 18 2005

HOWARD G. HOGAN

No. 152370-2

Re: Aarys Charles Oberlander-Hower
    D.O.B. 06/05/1996

### ORDER

    This cause came to be heard on the 12ᵗʰ day of August, 2005, before the Honorable Darryl R. Fansler, Chancellor, holding the Chancery Court of Knox County, Part 2, on the Defendant's Motion for Contempt and to Reconsider the Order announced March 14ᵗʰ, 2005 and entered on June 9, 2005, the Show Cause order issued served on July 1, 2005, testimony of the Defendant and his stepfather, statements and arguments of counsel for the Defendant, and the entire record in this matter, from all of which it is found that the Defendant's Motion is well taken. The Court announced it's opinion and the transcribed opinion is attached hereto and incorporated by reference. It is hereby found as follows:

    1. The Court, having called out the Mother in open court, finds that she has failed to appear as required by the Show Cause Order issued by this Court and served upon her on July 1, 2005. Mother is found to be in contempt of this Court for her continued disregard for the orders of this Court, including her failure to appear in response to the timely-served Show Cause Order, the announced order and subsequently entered Orders regarding coparenting, the original order enjoining her from removing from the state of Tennessee and the order granting the Defendant temporary custody.

2. The Mother failed and refused to provide the minor child for coparenting time as ordered by this Court and further, has prevented any meaningful communication between the Father and child.   Mother's disregard for the rights of the Father and her active attempts to sabotage any relationship between the Father and the parties' minor child are found to be a material and substantial change in circumstances warranting a modification of the coparenting arrangement.

3. Conversely, the Court finds that there is no evidence indicating a likelihood that Father would prevent or interfere with a relationship between the child and his Mother or fail to return the minor child for coparenting time with his Mother.

4. The Court finds that the Father should be the primary residential parent of the minor child and is granted immediate physical custody of the child and that the Mother should be required to pay an appropriate amount of child support according to the Tennessee Child Support Guidelines.

5. In order to effectuate the order of the Court, the Child is authorized to travel alone, or under the direction of a single parent. Further, the Father is entitled to renew the child's passport without the signature or permission of the Mother.

This order is not specific as to date other than otherwise outlined and applies to Aarys Hower until he reaches the age of 18.

The child is authorized to travel to any destination, international or domestic, without restriction other than any set out herein.

6. Father shall provide all contact information to the Mother and shall notify her of any change of such information or residence of the minor child immediately. Mother shall provide all contact information to the Father, as well as the location of the child while he is in the Mothers physical custody.

**Page 2 of 3**

7. The Mother shall be entitled to such coparenting time as the parties may agree or the Court may deem appropriate upon her proper request to the Court to order such time for her.

8. Costs of this matter are taxed to the Mother, for which execution may issue.

IT IS SO ORDERED

ENTER this 18th day of August, 2005.

DARRYL R. FANSLER, Chancellor

Approved for Entry:

WILLIAM A. MYNATT, JR.
Attorney for the Defendant
BPR #014972
SHEPPEARD, SWANSON & MYNATT, PLC
P.O. Box 2149
Knoxville, Tennessee 37901-2149
(865) 546-3653

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon the Mother by regular mail, to her address of her address of 563 Old Route 8 South, Titusville, Cherrytree Township, PA 16354.

WILLIAM A. MYNATT, JR.

CERTIFICATE

Howard G. Hogan hereby certify that I have mailed a true and accurate copy of the foregoing *Order* to all parties or their attorney of record who have not approved same, by placing same in the U.S. Mail, postage prepaid this 18 day of Aug, 2005.

PlA

Clerk & Master Chancery Court
By
Deputy Clerk

Page 3 of 3

CHAD ZACHARY HOWER          :     IN THE COURT OF COMMON PLEAS
                            :     VENANGO COUNTY, PENNSYLVANIA
VS.                         :
                            :
NANCY SUE OBERLANDER-HOWER  :     CIV No. 1751-2004

## FINDINGS

AND NOW, this 19th day of August 2005, the court
has conducted a hearing in this matter.

This case comes before this Judge in the context of
an Interstate Case, where the mother is presently living in
Cherrytree Township, Venango County, Pennsylvania, with the
child Aarys Charles Oberlander-Hower, date of birth June 5,
1996.

The parties have heretofore had the domestic
matters litigated in the Chancery Court of Knox County,
Knoxville Tennessee.  The court has had the benefit, through
counsel for the mother, of diverse Court Orders and Findings
of Fact from that court, and especially the Findings of the
Honorable Darryl R. Fansler, Chancellor, on March 14, 2005
and August 17, 2005, together with diverse Orders, including
the Order of the Knoxville Court, dated August 12, 2005.

This court first became involved in this case when
counsel for the father requested this court to enforce an
order, which transferred custody to the father on an
emergency basis, so that the father could remove the child to

1

Tennessee.  The court did at that time, pursuant to the pleadings, transfer custody to the father until the Tennessee Court could address the matter.  The Tennessee Court then did conduct a hearing in March.  Throughout, as we understand, the mother has had primary physical with the father having shared physical, principally during the months the child was not in school.  We note that the child at some point was home schooled.

From the conferences we have had with counsel, we conclude that the mother is presently living in Cherrytree Township, Venango County, Pennsylvania.  The child is enrolled in Cherrytree Elementary School, going into third grade at that school.   The court is familiar with the Cherrytree Elementary School.  We know it to be a quality rural elementary school in the Titusville School District. Titusville School District happens to be in Crawford County, Pennsylvania, however Cherrytree is a township in Venango County that abuts Titusville, and is part of the Titusville Area School District.

Based on our interpretation of the act, and we have spent some time reviewing the act, we would conclude that the mother, through her counsel, has a valid argument that this court should assume jurisdiction, in that the father, we find, has very limited ties at this point with Tennessee.  We

2

conclude, so far as we can tell from the evidence, the only

ties would be this litigation is in Tennessee.   The father

has a Florida driver's license, presently resides either in

Cyprus, or Russia, and frankly has stronger ties to

Pennsylvania, since that is the home of many of his family,

than he would to Tennessee.   Since the mother has been in

Pennsylvania since December 13, 2004, Pennsylvania would

qualify as the home state.   However, we also, through counsel

for the father's efforts, have read the Findings and Orders

from the Tennessee Court, and we are satisfied the Tennessee

Court, at this point in time, has better knowledge of the

family, has better knowledge of the history of the family's

domestic and custody disputes, and is better qualified at

this precise point in time to do a best interest assessment

of this child than would be this court.   Therefore,

notwithstanding our finding that Pennsylvania should be the

home state, we conclude that it is appropriate for this court

to respect the Tennessee court's disposition and to defer

decision on the immediate question of physical custody to the

Tennessee Court.

Consistent with the Uniform Act, we did, by

telephone, call the Honorable Darryl R. Fansler, who is the

Chancellor, who has been hearing this case in Knoxville,

Tennessee, and we spoke with him this date, August 19, 2005,

at about 12:15 p.m.  This Judge had told counsel, and my
recollection is that the mother was present at that
conference, perhaps as much as ten days ago, that we would
call Judge Fansler, an we did get his telephone number on a
late Friday afternoon, but then we got diverted on other
cases in this court and did not effect the call until we
received a fax from Ms. Mountjoy, counsel for the father,
that the Tennessee Court had entered an Order and Findings,
dated August 12, 2005.  Reading the August 12, 2005 Order and
Finding's is what prompted us to call Judge Fansler in
Tennessee today.  Having read Judge Fansler's findings from
August 12, 2005, we concluded that the appropriate thing to
do is to request Judge Fansler to rescind the Order that
transfers physical custody until he can conduct a full
hearing with the mother and child present.  I advised Judge
Fansler that I would Order the mother to present to Tennessee
at his direction with the child, and that it would be his
call, since he has better knowledge of the history of the
case, as to who should have primary custody after he has had
an opportunity to do a best interests assessment.

We are not willing to transfer physical custody of
the child at this point, because the mother has had long
standing physical custody, although we certainly understand
the Judge's frustration with the mother not appearing in

Tennessee, and the Judge's concern that the mother did not

deliver the child to the father this summer, consistent with

what he had directed in March 2005.  Nevertheless, the reason

the mother did not appear on the 12th of August 2005, may

have been a misunderstanding as far as the role of this court

and the fact that this Judge did not timely call the

Tennessee Court as we indicated we would try to do.

Therefore, we will order the mother to take Aarys to

Knoxville, Tennessee for a hearing at such time as Judge

Fansler directs.

We did discuss with Judge Fansler that if in fact

he concludes that the mother should have primary physical,

the case ought to be sent to Venango County, Pennsylvania.

If Judge Fansler concludes the father should have primary

physical, it will be his call as to what he wants to do with

jurisdiction.

The court does find that the mother is indigent,

and the court would either find counsel for the mother in

this court through the local bar association's pro bono

program, or we would appoint counsel to represent her.  The

mother is indigent as she does not have employment, asserts

that she is disabled, has applied for Social Security

Disability, but has been turned down, is presently seeking

assistance, and has not received support from the father

08/25/2005  16:10    8143363959          LAW OFFICE                    PAGE  07
08/22/2005  16:55    8144329697          COURT REPORTERS               PAGE  06/11

since January 2005. Although the support would only be $600
per month, which would not be a sustainable income. Even if
she did receive the ordered support she would still be
considered indigent by this court.

The mother has filed a petition for this court to
assume jurisdiction and a petition for emergency relief.
Counsel for the father would have this court dismiss the
petitions; counsel for the mother would have this court stay
the petitions pending the outcome of the Tennessee decision.
We have already stated in these findings that it will be up
to Judge Fansler to decide whether he is going to retain
jurisdiction or transfer the case to Pennsylvania. The
understanding we have is that if he concludes the child is to
reside in Pennsylvania hereafter, that he will transfer
jurisdiction to Pennsylvania. If he decides otherwise, then
he will make the decision. At this point we will stay the
Petition for Emergency Relief and the Petition for this Court
to Assume Jurisdiction, awaiting Judge Fansler's Findings and
Order.

The father presented to this court this morning
asking this Judge to enforce the Tennessee Order and further,
the court had received the facsimile communication from the
father's counsel on August 16, 2005. This Judge saw it for
the first time this morning around 11:00 a.m. at about the

6

time we were told that the father was waiting outside our

chambers seeking enforcement of the Tennessee Order.

BY THE COURT,

H. WILLIAM WHITE, President Judge

cc:     The Honorable Carryl R. Fansler
        Court Recorder/nac
        F. Walter Bloom, III, Esquire
        Barbara Mountjoy, Esquire (Fax# (0??) 236-2953)

CHAD ZACHARY HOWER            :      IN THE COURT OF COMMON PLEAS
                              :      VENANGO COUNTY, PENNSYLVANIA
VS.                           :
                              :
NANCY SUE OBERLANDER-HOWER    :      CIV No. 1751-2004

### ORDER OF COURT

AND NOW, this 19th day of August 2005, the court has conducted a conference on the record and has made findings, which we direct to be transcribed, and it is Ordered as follows:

Nancy Sue Oberlander-Hower is hereby ordered to transport Aary's Charles Oberlander-Hower, born June 5, 1996, to a hearing to be scheduled by the Honorable Darryl R. Fansler, Chancellor, of the Chancery Court for Knox County, Tennessee, at Knoxville, Tennessee, and submit to the jurisdiction of that court for a determination of custody.

This court will abide by the Findings and Order of the Tennessee Court as to Aary's best interests, so long as the Tennessee Court considers testimony of the mother and whatever mechanism the Tennessee Court uses to facilitate an interview of the child to determine what the child wants.

We further request the Tennessee Court to consider that this court has made a finding that the mother is indigent and would qualify in this County for pro bono appointed counsel, court engaged counsel, or legal services, and would request

the Tennessee Court to apply whatever practice it has for an

indigent custody litigant parent in this situation.

                              BY THE COURT,

                              W. WILLIAM WHITE, President Judge

cc:     The Honorable Darryl F. Fansler
        Court Recorder/oeo
        F. Walter Bloom, III, Esquire
        Barbara Mountjoy, Esquire (Fax) 814 336-3959

CHAD ZACHARY HOWER          :        IN THE COURT OF COMMON PLEAS
                            :        VENANGO COUNTY, PENNSYLVANIA
VS.                         :
                            :
NANCY SUE OBERLANDER-HOWER  :        CIV No. 1751-2004

## ORDER OF COURT

AND NOW, this 19th day of August 2005 consistent with agreement of parties reached in open court, the mother, Nancy Sue Oberlander-Hower, is directed to deliver Aarya Charles Oberlander-Hower, to the father for a visit at 7:00 p.m. this evening, August 19, 2005, at 415 Cummings Street, Cambridge Springs, Pennsylvania.

The father, Chad Zachary Hower, will return the child to the mother at her address, 563 Old Route 8 South, Titusville, Pennsylvania 16354, not later than 7:00 p.m. Sunday, August 21, 2005. The father has indicated that he may not be able to keep the child until 7:00 p.m. due to his air travel arrangements, in which event he will notify the mother as soon as possible, perhaps even when she delivers the child this evening, the precise time he will return the child on Sunday, August 21, 2005. In any event the child will be returned before 7:00 p.m. Sunday, August 21, 2005.

The father will forthwith deliver the child's passport to his counsel and counsel will have the passport before the child is to be delivered at 7:00 p.m. this evening. Counsel may, once

the child is delivered on Sunday, August 21, 2005, dispose of

the passport as she considers appropriate.

     The father's counsel would object that this is in overall

context an agreement, because the father contends he should have

custody of the child pursuant to the Tennessee Order at this

time.  The father is agreeing to this in order to have the

opportunity to see his child while he is in Pennsylvania.  The

father has however, on this record, assured the court that he

will return the child consistent with this order.

                         BY THE COURT,


                         H. WILLIAM WHITE, President Judge


cc:    Than Honorable Darryl R. Fansler
       Court Recorder/nac
       F. Walter Bloom, III, Esquire
       Barbara Mountjoy, Esquire (fax# (814) 336-3959)

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

NANCY SUE OBERLANDER,       )
                           )
       Plaintiff,      )
                           )
vs.                    )    No.  152370-2
                           )
CHAD ZACHARY HOWER,        )
                           )
       Defendant.      )

APPEARANCES:

       MS. NANCY SUE OBERLANDER
       The Plaintiff, Pro Se

       MR. WILLIAM A. MYNATT, JR.
       Attorney for the Defendant

OPINION OF THE COURT

October 11, 2005

COPY

CHANZE WITCHER
MILLER & MILLER COURT REPORTERS
12804 Union Road, Knoxville, TN 37934
Phone (856) 675-1471

1          OPINION OF THE COURT

2          All right.  At the outset of this case I made some

3    comments about the situation in Pennsylvania and that Judge

4    White had asked this Court to revisit this on a best interest

5    analysis.  And I'm going to reiterate, I know I was busy when I

6    talked with Judge White, and it's obvious from his findings

7    that he's a very busy Judge, but I'm going to urge that time be

8    taken to consider all of the steps that have gone on in this

9    case from its outset; certainly, since the issue and the

10   relocation to Pennsylvania arose.

11         And I will reiterate that Ms. Oberlander was ordered

12   to bring the child to Tennessee earlier this year.  That, in

13   fact, he resided several months with his father.  He was in

14   school here.  He had trips with his father out of the country

15   and he was returned.  I would also reiterate that that March

16   hearing was conducted on the father's motion to modify the

17   permanent Parenting Plan.

18         The Court found changed circumstances with a

19   comparative fitness and best interest analysis at that time.

20   And I will again say that either of these parents would be fit

21   and proper to raise this child.

22         Now, as pointed out in March, the Court felt that so

23   long as Ms. Oberlander would recognize the father's

24   relationship with the son and do what was necessary to foster

25   that relationship then the Court would -- felt it would be best

1    for the child to remain in the United States with his father

2    having extended periods of visitation in the summer.

3              There is a history of noncompliance with court orders

4    in this case by Ms. Oberlander.  After March, there was a

5    flurry of activity in this court.  Mr. Mynatt and Mr. Martin

6    were here on more than one occasion with problems getting this

7    order entered.  There were problems making sure that the

8    passport was obtained.  In fact, I guess, the final order

9    probably wasn't entered until some time in June.  Thereafter,

10   the child was not allowed to visit with his father.

11             THE COURT:  Ms. Oberlander, I'm through.  I've

12   given everybody an opportunity.  There's no more talk this

13   morning, except I'm going to rule on this case.

14             Now, the Court set a hearing for August, August the

15   12th.  And apparently, prior to August the 12th, there was some

16   proceedings initiated in Pennsylvania.  Again, there was no

17   response to this Court's order to appear on August the 12th.

18             I don't think that Judge White told everybody to

19   ignore an order of this Court.  That he would take care of it,

20   you can just ignore it and not do anything.  Certainly, I would

21   not consider that proper on my part if I were dealing with an

22   order of the Court in the State of Pennsylvania.

23             On August the 12th, I conducted a hearing; no one

24   appeared on behalf of Ms. Oberlander.  I heard testimony from

25   Mr. Hower's stepfather about how he had gone to pick up the

1   child and there was no one at home.  Today, Ms. Ober-lander

2   confirmed that she spoke with the stepfather just a day or two

3   before the time that the child was supposed to be picked up.  I

4   presume that had she appeared on August 12th of this year that

5   she would have offered the same explanation for the child not

6   being ready to travel as she has offered today.

7            One of those being that she did not know where the

8   child would be for the duration of the summer.  And the other

9   that there was some uncertainty regarding the application of

10  this Court's orders as to this summer's visitation with the

11  father.

12           The Court will address the second explanation first.

13  As I said previously, there was a flurry of activity trying to

14  get an order entered.  There were issues about getting the

15  passport entered.  It is inconceivable that there could have

16  been any question.  Certainly, there was no question in the

17  minds of the attorneys as to the application of this order to

18  the summer of 2005.  There was urgency regarding the passport

19  being issued in time to meet the time the child was suppose to

20  leave the country.

21           As to the other issue of Ms. Oberlander not knowing

22  where the child would be and her explanation this morning was

23  that everybody refused to tell her.  The Court finds based upon

24  her testimony and what I've heard this morning that there was

25  no effort to find out where the child would be.  Certainly,

1   there was no communication to the stepfather, who was going to

2   pick him up -- to Mr. Emerson who was going to pick him up.

3   She had a telephone conversation with him just days before and

4   had the opportunity at that time to say, "Mr. Emerson, you're

5   welcome to come, but you need to bring with me, or with you,

6   the address and telephone number where I can reach my son this

7   summer and tell me where he will be."  "Otherwise, I won't let

8   him go."

9           Certainly, in the May 15th letter that was written to

10  Mr. Hower there was an opportunity to say, "I know that you

11  plan on picking him up on a certain date, and if you intend to

12  do that, you first need to let me know where, and where he will

13  be, and how I can reach him."

14          Judge White seemed to think this Court changed

15  custody in this case because I was frustrated with the mother's

16  noncompliance with orders.  I didn't change it because I was

17  frustrated with her noncompliance with orders.  I changed it

18  because I felt it was in the child's best interest that he live

19  with his father because I thought his father would make some

20  effort to foster a relationship with the mother in this case.

21  I did not feel then that she would do the same.  And my

22  suspicions have been abundantly confirmed by her actions since

23  March of this year.

24          I don't think Ms. Oberlander ever intends to do

25  anything to foster a relationship between her son and his

1   father.   And everything she has done today shows that she will

2   go to any effort to frustrate that and will go to no effort to

3   foster that relationship.

4           Now, this Court has jurisdiction in this case until

5   this child reaches 18 years old.   There are provisions under

6   the Uniform Act, where other courts can assume jurisdiction.   I

7   have done no analysis as such as to what Mr. Hower's permanent

8   residence is.   I'm presuming that he's a resident of the

9   foreign country now.   But as Mr. Mynatt pointed out this

10  morning, in order to obtain home state status the child has to

11  rightfully be there.   I'm not sure that the child has

12  rightfully been six months in Pennsylvania.

13          Of course, had this Court's order been adhered to

14  Pennsylvania would have certainly obtained home state

15  jurisdiction.   And whether it has or has not, is not for me to

16  take the decision on.   That's for the judge asserting the

17  jurisdiction.

18          I will acknowledge that if it is a proper case for

19  Pennsylvania to hear, then certainly, Pennsylvania appears to

20  be the more convenient forum.   That's where the child will be.

21  That's where the mother is.   That's where the grandparents are,

22  or in close proximity.   And certainly, it would appear any

23  witness with a bearing on this case would be more convenient to

24  have the Pennsylvania Court hear it.

25          I would say that this Court has rendered a judgement

REPORTER'S CERTIFICATE

STATE OF TENNESSEE           )

COUNTY OF KNOX               )

I, CHANZE WITCHER, Court Reporter and Notary Public in and for the County of Knox, State of Tennessee at Large, do hereby certify:

That I reported stenographically the proceedings held in Chancery Court on the 11th day of October, 2005, in the matter of Nancy Sue Oberlander v Chad Zachary Hower, 152370-2; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate record of said proceedings to the best of my knowledge, skills, and ability.

I further certify that I am not kin to any of the parties involved therein nor their counsel, and I have no financial or otherwise interest in the outcome of these proceedings whatsoever.

This the 13th day of October, 2005.

_____
CHANZE WITCHER
Court Reporter and Notary Public

My Commission Expires:   04/08/09

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

NANCY SUE OBERLANDER-HOWER,
      Plaintiff,

v.                                            No. 152370-2

CHAD ZACHARY HOWER,
      Defendant.

### ORDER

This cause came on to be heard for further hearing on October 11, 2005, before the Honorable Daryl R. Fansler, Chancellor of the Chancery Court, Part II, for Knox County, Tennessee, upon the Father's Motion to Modify and Rehear; statement of the Mother, pro se; statements of the Father's counsel; testimony of the Mother; and testimony of the witnesses, and the entire record in this matter, from all of which the Court finds as follows:

    1.     In March of 2005, the Court held a trial in this matter and found a change of circumstances with regard to the parenting arrangement and conducted a comparative fitness and best interest analysis at that time. Since that time, the Mother's history of non compliance with court orders as well as her failure to foster and interference with a relationship between the Father and the son, on August 12, 2005, the Court changed arrangement finding that it is in the child's best interest that he live with his Father.

    2.     The Court's order of August 18, 2005, remains in effect and a transcript of the Court's Memorandum Opinion is incorporated by reference and attached hereto.

    3.     The costs of this cause shall be taxed to the Mother.

Page 1 of 2

08/31/2006  11:55   8143320033                   BARBARA MOUNTJOY                    PAGE 02/02

08/30/2006 WED 16:20  FAX 814 432 3149 VENANGO CO JUDGES CHMBRS +++ MOUNTJOY                     ☐ 001/001

CHAD ZACHARY HOWER,      : IN THE COURT OF COMMON PLEAS,
                                : VENANGO COUNTY, PENNSYLVANIA
                                :

vs.                                :

NANCY SUE OBERLANDER, formerly   :
NANCY SUE OBERLANDER-HOWER,   : Civ. No. 1751-2004

### ORDER OF COURT

AND NOW, this 30th day of August, 2006, this court is assuming exclusive jurisdiction of this case.

IT IS HEREBY ORDERED that an evidentiary hearing is to be held on Monday, November 6, 2006, at 8:30 AM in Courtroom III, at which time the named parties, the parties; the parties child, Aarys; and the child's advocate are to appear. The evidentiary hearing is scheduled pursuant to the petitioner's, Nancy Sue Oberlander, petition for modification of child custody. This evidentiary hearing is scheduled for evidence to be entered by both parties concerning the best interest of the parties' child. Aarys will be present for the hearing, however either party or any remote witness may present testimony by telephone or video conference.

IT IS ALSO ORDERED that the Tennessee court's order of October 11, 2005, be given full faith and credit. Pursuant to that order, the petitioner is to give custody of the child and transport the child to the respondent, Chad Zachary Hower, on August 31, 2006, by 4:30 pm.

BY THE COURT,

H/ WILLIAM WHITE, President Judge

cc:   Barbara Mountjoy, Esquire
      F. Walter Bloom, Esquire
      Elissa Suttler, Esquire (Child Advocate)

1

09/06/2006   12:34   8143320033                    BARBARA MOUNTJOY                PAGE  02/17
09/05/2006  TUE 14:22  FAX 814 432 3149  VENANGO CO JUDGES CHAMBERS              ☒001/016

CHAD ZACHARY HOWER,                        : IN THE COURT OF COMMON PLEAS,
                                           : VENANGO COUNTY, PENNSYLVANIA
                                           :
vs.                                        :
                                           :
NANCY SUE OBERLANDER, formerly             :
NANCY SUE OBERLANDER-HOWER,                : Civ. No. 1751-2004

### OPINION OF THE COURT

Before the court, on this 5th day of September, 2006, is the respondent's, Chad
Hower, objection to this court assuming jurisdiction over the petitioner's, Nancy Sue Oberlander,
petition to modify custody. After careful consideration, this court is assuming jurisdiction.

On December 8, 2003, the parties entered into a parenting plan in Knox County
Tennessee. On that same day, the Honorable Daryl R. Famsler adopted the parenting plan as an
order of that court. In the parenting plan, the parties agreed upon the custody arrangement of
their son, Aarys Charles Oberlander, born in Crawford County, Pennsylvania. The petitioner
moved with the child from the State of Tennessee to her parents' home in Venango County,
Pennsylvania, on September 13, 2004. Thereafter, the respondent sought to modify custody. On
December 22, 2004, this court entered an order compelling the petitioner to relinquish custody of
the child until the Tennessee Court had resolved the issue of custody.

On March 19, 2005, the Tennessee Court determined that the petitioner's move to the
Commonwealth of Pennsylvania and the enrollment of the child in public school was a material
and substantial change in circumstances which required a modification of the custody
arrangement. The past custody arrangement was changed to permit the petitioner to have primary
custody of the child during the school year; and in the summer after the school year was
complete; the respondent was to have custody of the child. On June 9, 2005, the petitioner filed

1

09/06/2005  12:34   8143320033                BARBARA MOUNTJOY              PAGE 03/17

in this court a petition to modify custody. She asserted that during the time that the respondent had custody, she was unable to communicate with the child. She also asserted that this court should assume jurisdiction of the matter. The respondent on June 13, 2005, filed a motion in contempt with the Tennessee Court because the petitioner failed to transfer the custody of the child to him pursuant to the Tennessee order of court on March 19, 2005. The respondent also filed with this court a motion to dismiss the petitioner's petition to modify custody.

On August 12, 2005, the Tennessee Court determined that the petitioner was in contempt for failing to abide by its previous orders. The Tennessee Court changed the custody order arrangement to the respondent having primary custody during the school year and the mother having custody during the summer. The mother had failed to appear at the August 12, 2005, hearing in the State of Tennessee. On August 19, 2005, this court entered findings of fact and an order of court deferring jurisdiction to the Tennessee Court so long as the Tennessee Court held a hearing where the mother's statements would be heard and a best interest analysis would be entered on the record. On October 11, 2005, the Tennessee court entered an identical order to its August 12, 2005, order. The judge in the State of Tennessee relied on the record established there and did not hold an evidentiary hearing where the mother or the child's interest were heard. The Tennessee Court also concluded that it had exclusive continuing jurisdiction in this matter until the child reached the age of eighteen (18) years.

On August 11, 2006, the petitioner filed the present petition for modification of custody. She asserts that the respondent is now moving from Cyprus to Turkey and she has been unable to communicate with her child. She requests that this court assume jurisdiction over the case. A hearing was held in this court on August 29, 2006, where both parties entered evidence and

2

09/06/2006  12:34   8143320033                              BARBARA MOUNTJOY
09/05/2006 TUE 14:23  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                PAGE  04/17
                                                                               ✉003/018

arguments were heard. At the conclusion of the hearing in open court, we entered findings of fact

on the record which are incorporated by reference.

A court of the Commonwealth of Pennsylvania may assume jurisdiction to modify a

custody order of another state's court,

> Except as otherwise provided in section 5424 (relating to temporary emergency
> jurisdiction), a court of this Commonwealth may not modify a child custody
> determination made by a court of another state unless a court of this Commonwealth has
> jurisdiction to make an initial determination under section 5421 (a)(1) or (2) (relating to
> initial child custody jurisdiction) and...

23 Pa.C.S.A. §5423. A Pennsylvania Court must also determine that the original state court no

longer has exclusive continuing jurisdiction of the custody matter pursuant to 23 Pa.C.S.A.

§5422, or the court of the Commonwealth of Pennsylvania is a more convenient forum pursuant

to 23 Pa.C.S.A. §5427.  23 Pa.C.S.A. §5423(1). Also jurisdiction may be assumed by a court of

the Commonwealth of Pennsylvania, if this court determines that "the child, the child's parents

and any person acting as a parent do not presently reside in the other state." 23 Pa.C.S.A.

§5423(2).

To determine whether this court has jurisdiction to make an initial conclusion on custody,

the court must find that the Commonwealth of Pennsylvania is the home state of the child on the

date of commencement of the proceedings or the Commonwealth has been the home state of the

child at least six months before commencement of proceedings. 23 Pa.C.S.A. §5421(a)(1). Home

state is defined as,

> The state in which a child lived with a parent or a person acting as a parent for at least six
> consecutive months immediately before the commencement of a child custody
> proceeding. In the case of a child six months of age or younger, the term means the state
> in which the child lived from birth with any of the persons mentioned. A period of
> temporary absence of any of the mentioned persons is part of the period.

3

09/06/2006  12:34   8143320033                          BARBARA MOUNTJOY              PAGE  05/17
05/05/2000 TUE 14:25  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                       @004/016

23 Pa.C.S.A. §5402, *See also Lucas v. Lucas*, 882 A.2d. 523, 527 (Pa.Super. 2005). The child moved with the petitioner to the Commonwealth of Pennsylvania in September of 2004. In December of 2004, this court compelled the mother to transfer custody to the respondent who was in the State of Tennessee. In March of 2005, the Tennessee court gave the petitioner custody of the child and she remained the primary custodian until the Tennessee court's order in October of 2005. At that time, the respondent became the primary custodian; however, the respondent no longer resided in the State of Tennessee, but at an unknown address in Cyprus. In June of 2006, the child returned to the Commonwealth of Pennsylvania to reside with the petitioner and has resided here until September 1, 2006. We find that at the commencement of the current controversy the child has not resided in the Commonwealth of Pennsylvania for six months.

Though, the "home state" is the preferred jurisdictional analysis for a custody matter, its not the sole means by which the court assumes jurisdiction. *Favacchia v. Favacchia*, 769 A.2d. 531, 539 (Pa.Super. 2001). The court is required to continue the analysis to determine whether the child has significant connections with the Commonwealth of Pennsylvania. *Dincer v. Dincer*, 701 A.2d. 210, 215 (Pa. 1997). Before addressing the child's significant connections to the Commonwealth of Pennsylvania, we will address the second part of the analysis for jurisdiction on the initial determination of custody, which requires the court to determine whether another state is the "home state" of the child. 23 Pa.C.S.A. §5421(a)(2).

We conclude that no other state in the United States of America is the "home state" of the child. The State of Tennessee has not been the "home state" of the child since March of 2005. *See*, 23 Pa.C.S.A. §5402 Since March of 2005, the child has either resided with the petitioner in the Commonwealth of Pennsylvania or with the respondent in Cyprus. The child has only

4

traveled through the State of Tennessee pursuant to the court orders and custody exchanges issued from that state.

The next step in the analysis in assuming jurisdiction requires the court to determine that the child and at least one parent has significant connections with the Commonwealth of Pennsylvania and that there is substantial evidence within this jurisdiction concerning "child care, protection, training and personal relationships". 23 Pa.C.S.A. §5421(a)(2)(i) and (ii). "Significant connections must be applied flexibly, taking into account the unique circumstances of the particular child or children." *Dincer v. Dincer*, 666 A.2d. 281, 285 (Pa.Super. 1996). The child's connections to this jurisdiction are determined only from the time before commencement of the current proceedings. *Dincer v. Dincer*. 701 A.2d. 210, 215 (Pa. 1997). The analysis does not balance the child's connections to one state over that of the connections with the Commonwealth of Pennsylvania. *Id*.

The petition for modification of custody was filed on August 11, 2006, so we are only permitted to view the significant connections made by the child and the petitioner before that date. *Id*. First, we find that the petitioner moved to the Commonwealth of Pennsylvania because her parents reside here. The petitioner as of September 2003, had no reason to reside in the State of Tennessee. By that time, the respondent and she had acquired a divorce order and the respondent was working overseas. We find that the petitioner moved back to be near her extended family to create a more stable financial setting for herself and her child. Finally, the petitioner has not relocated her residence outside of the Commonwealth of Pennsylvania since her move in September of 2004. Thus, we find that the petitioner is a resident and has significant connections to the Commonwealth of Pennsylvania.

09/06/2006   12:34   8143320033                    BARBARA MOUNTJOY                    PAGE  07/17
09/05/2006 TUE 14:24  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                        @006/016

We also find that the child has significant connections to the Commonwealth of Pennsylvania. His mother and both his paternal and maternal grandparents reside in the Commonwealth of Pennsylvania. He also attended public schools within the Commonwealth of Pennsylvania during the 2004-2005 school year. In the summer of 2006, he resided with the petitioner and at the August 28, 2006, hearing the child's court appointed advocate asserted that the child desired to stay here in the Commonwealth of Pennsylvania with his mother. The Commonwealth of Pennsylvania is also the location that evidence can be acquired to the child's care, protection, training, and personal relationships with family, teachers, and school mates.

The third portion of the analysis on whether this court has jurisdiction to determine the initial custody is that the original state court must relinquish jurisdiction. 23 Pa.C.S.A. §5421(a)(3). The Tennessee Court who had original jurisdiction of this matter has not relinquished jurisdiction to this court. In fact, the Tennessee Court has stated the contrary when the Tennessee judge asserted that the State of Tennessee had exclusive continuing jurisdiction in this matter until the child reached eighteen (18) years of age.

Our analysis does not end there. If the original state court will not relinquish jurisdiction, then this court must determine whether the Tennessee Court has jurisdiction of the matter pursuant to 23 Pa.C.S.A. §5421(a)(1), (2), or (3). 23 Pa.C.S.A. §5421(a)(4). We conclude that the State of Tennessee does not have jurisdiction of this matter. As stated above, the child's "home state" is not the State of Tennessee. See, 23 Pa.C.S.A. §5421(a)(1). The child has not resided in the State of Tennessee since March of 2005. In addition, neither the child nor does either parent currently reside in the State of Tennessee. See, 23 Pa.C.S.A. §5421(a)(2). Neither the child nor the parents have significant connections with the State of Tennessee. See, 23 Pa.C.S.A. §5421(a)(2)(i). The respondent works and resides in Cyprus. The petitioner works and

6

09/06/2006   12:34   8143320033                    BARBARA MOUNTJOY                    PAGE  08/17

resides in the Commonwealth of Pennsylvania.  The child resides with either party during the year. The State of Tennessee has no evidence of child care, protection, training, or personal relationships provided to the child from that state because the child does not reside there to receive any of those services. *See*, 23 Pa.C.S.A. §5421(a)(2)(ii). Finally, the only states assuming jurisdiction of this matter is the Commonwealth of Pennsylvania and the State of Tennessee. This court is not relinquishing jurisdiction to the State of Tennessee. See, 23 Pa.C.S.A. §5421(a)(3).

Thus, we conclude that this court has jurisdiction for an initial determination of custody pursuant to 23 Pa.C.S.A. §5421. Next, we must determine whether the State of Tennessee has exclusive continuing jurisdiction; whether either parent or child lives in Tennessee, or whether this is the most convenient forum. 23 Pa.C.S.A. §5423. Though this court only needs to satisfy one of three to assume jurisdiction for modification of another state's child custody order, we will address all three requirements. 23 Pa.C.S.A. §5423.

Exclusive continual jurisdiction is governed by 23 Pa.C.S.A. §5422, which directs that the court who issues the initial order for child custody maintains exclusive continuing jurisdiction. Exclusive continuing jurisdiction is only interrupted if it is determined:

> (1)...that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with [the State of Tennessee] and that substantial evidence is no longer available in [the state of Tennessee] concerning the child's care, protection, training and personal relationships or
> (2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in [the State of Tennessee].

23 Pa.C.S.A. §5422(a). We have previously stated in this opinion our finding that the child and the child's parents have no significant connections with the State of Tennessee. We have also found that the substantial evidence of the child's care, protection, training, and personal

7

09/06/2006   12:34   8143320033                                    BARBARA MOUNTJOY                    PAGE  09/17
09/05/2006 TUE 14:23  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                                         @008/016

relationships is not available in the State of Tennessee. Finally, we have found that the parents
and child do not presently reside in the State of Tennessee. Thus, we conclude that the Tennessee
Court no longer has exclusive continuing jurisdiction.

The court pursuant to 23 Pa.C.S.A. §5423(2) is required to determine whether the child or
the parents currently reside in the State of Tennessee. As stated above, we have found that the
parents and the child no longer reside in the State of Tennessee. The petitioner resides in the
Commonwealth of Pennsylvania. The respondent resides in Cyprus. The child lives with either
the petitioner or the respondent depending on who has custody.

Finally, for this court to assume jurisdiction, we must determine whether the State of
Tennessee is an inconvenient forum pursuant to 23 Pa.C.S.A. §5427. The factors to be
determined for an inconvenient forum are,

(1) whether domestic violence has occurred and is likely to continue in the future and
which state could best protect the parties and the child;
(2) the length of time the child has resided outside this [Tennessee];
(3) the distance between the court in this Commonwealth and the court in the state that
would assume jurisdiction;
(4) the relative financial circumstances of the parties;
(5) any agreement of the parties as to which state should assume jurisdiction;
(6) the nature and location of the evidence required to resolve the pending litigation,
including testimony of the child;
(7) the ability of the court of each state to decide the issue expeditiously and the
procedures necessary to present the evidence; and
(8) the familiarity of the court of each state with the facts and issues in the pending
litigation.

23 Pa.C.S.A. §5427(b). The first factor is not relevant in this case since neither party has alleged
the occurrence of domestic violence. As to the second factor, the child last resided in the State of
Tennessee before the month of March in 2005. Thus, we find that the child has resided outside of
the State of Tennessee for seventeen (17) months.

8

09/06/2006   12:34   8143320033                    BARBARA MOUNTJOY                    PAGE 10/17
09/05/2006 TUE 14:25  FAX 814 432 3149 VENANGO CO JUDGES CHMBRS                    @009/016

In addressing the third and fourth factor stated above under 23 Pa.C.S.A. §5427(b), we find that the distance and the financial cost to travel to either the Tennessee Courthouse or to the Venango County Courthouse is equivalent for the respondent. However, we find that the distance to travel to the Tennessee Courthouse is a financial burden on the petitioner. We find that petitioner's finances make her indigent by our state standards so forcing her to travel to the State of Tennessee to litigate this matter is overly burdensome. In addition, the petitioner is afforded appointed counsel here in Venango County, whereas in the State of Tennessee she has been forced to litigate this complicated custody matter pro se.

At the present moment, neither party agrees to which state should have jurisdiction in this matter. The Tennessee court did note that the parties in their parenting plan did agree to jurisdiction being held in the Tennessee Courts. Though when considering the seventh factor under 23 Pa.C.S.A. §5427(b), we find that the Tennessee Court cannot expeditiously resolve the issues of this custody dispute or provide the necessary procedures. The Tennessee Court has in the past two years been forced to issue orders that later must be enforced by this court because the petitioner and the child reside or at least been physically present in this county. The petitioner has failed to comply with these orders issued by the Tennessee court, which creates additional proceedings that are held in this court. The evidence and the parties that must testify are also located here. We find that this court has the authority, the proceedings, and the evidence available to resolve the issues in this matter expeditiously. We will have the capacity to enforce our orders.

Finally, we had found in the previous several proceedings that the Tennessee Court has more familiarity with the parties and the issues in this case. We had given deference to the Tennessee Court in the past and may have even given the same orders as the Tennessee Court.

9

However, we find from the above facts as applied to the factors pursuant to 23 Pa.C.S.A.

§5427(b) that the most convenient forum for the parties is here in the Commonwealth of

Pennsylvania and that the State of Tennessee is an inconvenient forum.

Before concluding our analysis, we must address 28 U.S.C. §1738A, which gives full

faith and credit to child custody determinations made by another state. Also it states,

> The appropriate authorities of every State shall enforce according to its terms, and shall
> not modify except as provided in subsections (f), (g), and (h) of this section, any custody
> determination or visitation determination made consistently with the provisions of this
> section by a court of another State.

28 U.S.C. §1738A(a). Pursuant to 28 U.S.C. §1738A(f), a court may modify a custody order of

another state if that court has jurisdiction and the state court which issued the order no longer has

jurisdiction. We have determined through our above analysis that this court has jurisdiction to

modify the custody order and that the Tennessee Court no longer has jurisdiction in this matter.

Next, the statute directs that this court cannot exercise jurisdiction in this matter if there

are still proceedings pending in the Tennessee Court. 28 U.S.C. §1738A(g). At the current

moment, the petition to modify custody in this court is the only pending proceeding. The parties

do not currently have any issue or proceedings pending in the State of Tennessee. The final part

of the analysis to modify another state's custody order states,

> A court of a State may not modify a visitation determination made by a court of another
> State unless the court of the other State no longer has jurisdiction to modify such
> determination or has declined to exercise jurisdiction to modify such determination.

28 U.S.C. §1738A(h). Custody is at issue in the present case; but as stated above we have found

that jurisdiction lies with this court and not with the Court of Tennessee. Any future issues

involving custody or visitation lies with this court so long as this court has exclusive continuing

jurisdiction.

09/06/2006  12:34   8143320033                          BARBARA MOUNTJOY                PAGE  12/17
09/05/2006 TUE 14:26   FAX 814 432 3149 VENANGO CO JUDGES CHMBRS                      @011/016

In assuming jurisdiction, we are giving full faith and credit to the Tennessee Court's order of October 11, 2005. Pursuant to that order, the respondent shall maintain primary custody. This opinion only addresses our reasoning for assuming jurisdiction and is not a determination on the petition to modify custody. In our order of August 30, 2006, we have scheduled a hearing so that both parties can be heard and that a best interests analysis for the child is completed. At that point, this court will determine whether custody should be modified.

Therefore, for the above reasons, this court is assuming jurisdiction in this matter.

BY THE COURT,

H. WILLIAM WHITE, President Judge

11

CHAD HOWER,

vs.

NANCY OBERLANDER,

: IN THE COURT OF COMMON PLEAS
: VENANGO COUNTY, PENNSYLVANIA
:
:
: CIV. NO.  1751 - 2004

## FINDINGS OF FACT

AND NOW, this 29ᵗʰ day of August 2006, there is a petition to modify custody filed on behalf of the mother in this proceeding. There is a petition to dismiss the petition to modify custody and preliminary objections to said petition filed on behalf of the father. The court did, on motion of counsel for the mother, appoint counsel for the child, Aarys Charles Oberlander-Hower, born June 5, 1996, in this case, Elissa Stuttler, Esquire. Elissa Stuttler has met with the child and has argued this matter as the child's advocate and has contended that it is in the child's best interest that this court assume jurisdiction.

This case has been in and out of this court for a couple years. Generally speaking we have been asked to enforce orders emanating from Tennessee Chancellery Court. Most recently this court did in 2005 make findings and did direct at some point that the mother take the child to Tennessee so that the proceedings could be resolved in the Tennessee Chancellery Court. The Chancellery Court in Tennessee did conduct a hearing in October of 2005 and notwithstanding his prior orders in which he had given primary physical custody to the mother during the school year and physical custody for all but two weeks of the child's summer from school

1

with the father, the judge "flip-flopped" the custody order, in part because the mother, he found, had been throwing up barriers to the father getting his time with the child.  That court, we find, did not conduct a full evidentiary hearing, but in its findings did substantially do a "best interests assessment" and while the chancellor did not interview the child and determine what the child wanted, the child at the time would have been 9 years old, did not interview the step mother, and allowed the mother, who is indigent, to litigate the matter without counsel even though we suggested he secure counsel for her, nevertheless couched his findings principally on the fact that the mother had thrown up barriers to the father spending time with the child, had for diverse reasons not fully complied with court orders, and therefore awarded primary custody during the school year to the father.  The court is not clear on how much testimony was received.  The mother told us that she did testify and that the father testified.  The mother did not have counsel at that proceeding.  We had asked the Tennessee court to try to secure counsel for her for that proceeding because she was indigent, at least by Pennsylvania standards, and could not afford counsel here.  We were disappointed to learn the Tennessee court did not afford her counsel because we do view having counsel in custody trials as very beneficial to a party and where one party has counsel and the other does not, because of indigency, we see some unfair advantage.  We are disappointed that the Tennessee court did not interview the child and the step mother in doing its "best

2

09/06/2006  12:34   8143320033                        BARBARA MOUNTJOY              PAGE  15/17
09/05/2006 TUE 14:20  FAX 814 432 3149  VENANGO CO JUDGES CHMBRS                        ☒014/016

interest assessment". On the other hand we certainly understand that the Tennessee court appropriately heavily weighted in its opinion the mother's not promoting the time between the child and the father.

Significantly, the mother had resided in Venango County, Pennsylvania since September of 2004. Both the mother and the father grew up in Pennsylvania; the mother in the Erie area, the father in the Edinboro, which is near Erie, area. The mother's extended family generally resides in the Erie, Pennsylvania area. The father's extended family generally resides, the paternal grandmother, in Cambridge Springs, which is in Crawford County, and the paternal grandfather of the child, in Hadley, which is in Mercer County, Pennsylvania. It is unlikely, based on what we can tell from the evidence adduced in the several hearings in this court or from what we have read in the Tennessee court's findings, that Tennessee would in the future have any connection with the case other than the fact that the Tennessee court has historically heard the custody proceedings. The father, as best we can determine, now lives in Cyprus.

The father at this point is employed by Microsoft and has for the past years traveled extensively in Europe and the Middle East; in the past year he has been in Amsterdam, Istanbul and Turkey, Cyprus, Greece, and perhaps in Bahrain. The child attended school this past year while in the father's custody in Cyprus. The father did conscientiously return the child to the mother at the contemplated time as per the Tennessee order. The child

3

09/06/2006 12:34 8143320033 BARBARA MOUNTJOY PAGE 16/17
09/05/2006 TUE 14:27 FAX 814 432 3149 VENANGO CO JUDGES CHMBRS ☒015/016

has been with the mother since June of this year and she is due to return the child to the father, pursuant to the Tennessee order, on September 1, 2006.

There is no question that as far as contacts are concerned and the prospects of future contacts, that Pennsylvania has a greater interest in the child and in the family. On the other hand we have to weigh against that the fact that the Tennessee court conducted two evidentiary hearings in 2005 and had dealt with the family even before 2004 when the mother returned to Pennsylvania.

The highly experienced, court appointed child advocate has told us that the child is mature for his age, very personable, thriving, loves both parents, and has told her that he wants her to advocate for him to stay with the mother and attend schools in Pennsylvania.

Whether the child has continuously lived in Pennsylvania for six months (one of the tests for "home state") is problematic. The Tennessee court addresses that in his findings and the child was physically present in Pennsylvania after September of 2004 for periods vastly in excess of six months. The Tennessee court was not inclined to treat the child's time as six months because during part of that period the mother was in defiance of the Tennessee Order; part of that time was probably attributable to this court because this court dealt with the matter and attempted to communicate with the Tennessee court but did not do so promptly and took

4

longer to resolve the matter in Pennsylvania than we should have.

Nevertheless, the Tennessee judge has found that the child has not been six

months continuously in Pennsylvania. Notwithstanding the Tennessee

court's finding, the child had been with the mother in Pennsylvania from

September 13, 2004, principally until the Tennessee judge awarded custody

to the father in October of 2005. The child was again in Pennsylvania from

June of 2006 to the end of August 2006. Since September of 2004, the child

has been in Tennessee, at best, a few days.

BY THE COURT,

H. WILLIAM WHITE, President Judge

Cc:    Court Recorder, ckr
       Barbara Mountjoy, Esquire
       F. Walter Bloom, III, Esquire
       Elissa M. Stutler, Esquire
       Tennessee Court

5

10/20/2006  12:06   8143320033   BARBARA MOUNTJOY   PAGE  02/06



# The Superior Court of Pennsylvania
## Office of the Prothonotary

GRANT BUILDING
310 GRANT STREET, SUITE 600
PITTSBURGH, PA 15219-2297

KAREN REID BRAMBLETT, ESQUIRE
PROTHONOTARY

ELEANOR R. VALECKO
DEPUTY PROTHONOTARY

(412) 565-7592
FAX: (412) 565-7711
WEBSITE: www. superior.pacourts.us

October 17, 2006

Barbara Jean Mountjoy, Esquire
310 Chestnut Street, Suite 332
Meadville, PA  16335

IN RE:  Chad Zachary Hower v. Nancy sue Oberlander-Hower
No. 1866 WDA 2006

Dear Ms. Mountjoy:

The Court has entered the following Order with regard to the above-captioned matter:

### "ORDER

The instant appeal has been filed from an order sustaining jurisdiction. As neither of the requirements set forth in Pa.R.A.P. 311(b) have been met, the appeal is hereby quashed, sua sponte, as interlocutory and unappealable pursuant to **Nepo Associates, Inc. v. Gloria Dei Outreach Corp.,** 700 A.2d 1917 (Pa. Super. 1997) and **Okkerse v. Howe,** 556 A.2d 827 (Pa. Super, 1989).

Date:  October 17, 2006

PER CURIAM"

Very truly yours,

*Eleanor R. Valecko*

Eleanor R. Valecko
DEPUTY PROTHONOTARY

ERV:dms

Cc:  F. Walter Bloom III, Esquire
Honorable H. William White, Jr.

A Certified copy of the Order will be sent to the lower court.

10/20/2006  12:06    8143320033                BARBARA MOUNTJOY                    PAGE  03/06
10/17/2006  12:07    8143363555                LAW OFFICE                         PAGE  01

10/17/2006 TUE 11:51   FAX 4323149 VENANGO CO JUDGES CHMBRS                        ⌀001/003

CHAD ZACHARY HOWER,         : IN THE COURT OF COMMON PLEAS,
                                 : VENANGO COUNTY, PENNSYLVANIA
                                 :
vs.                            :
                                 :
NANCY SUE OBERLANDER, formerly  :
NANCY SUE OBERLANDER-HOWER,  : Civ. No. 1751-2004

## ORDER OF COURT

AND NOW, this _17_ day of October, 2006, the court has considered the plaintiff's

motion to continue, the defendant's objection to the motion to continue, and the letter from the

Superior Court of Pennsylvania's Staff Attorney. Pursuant to Pa.R.A.P. 311 and *Donald L.F. v.*

*Michelle C.F.*, 449 A.2d. 37 (Pa.Super. 1982), we conclude that the plaintiff's appeal is

interlocutory. Therefore this court will proceed with the custody hearing scheduled for

November 6, 2006.

IT IS ORDERED that the defendant's motion to continue is hereby denied.

                                        BY THE COURT,

                                        H. WILLIAM WHITE, President Judge

cc:    Barbara Mountjoy, Esquire
        F. Walter Bloom, Esquire
        Elissa Stuttler, Esquire (Child Advocate)
        Eleanor R. Valocko Deputy Prothonotary

10/20/2006  12:06    8143320033                    BARBARA MOUNTJOY               PAGE  04/06
10/17/2006  12:07    8143363959                    LAW OFFICE                    PAGE  02
10/17/2006 TUE 11:52  FAX 4323149 VENANGO CO JUDGES CHMBRS                       002/003

CHAD ZACHARY HOWER,           : IN THE COURT OF COMMON PLEAS,
                              : VENANGO COUNTY, PENNSYLVANIA
                              :
                              :
vs.                           :
                              :
                              :
NANCY SUE OBERLANDER, formerly :
NANCY SUE OBERLANDER-HOWER,   : Civ. No. 1751-2004

## OPINION IN SUPPORT OF ORDER

The appellant, Chad Hower, has appealed to the Superior Court of Pennsylvania from the court order entered on August 30, 2006. Pursuant to Pa.R.A.P. No. 1925(a), the following is this court's statement relating to the issues raised on appeal.

The appellant's concise statement concerning matters raised on appeal raises one issue. The appellant asserts in this one issue that the trial court erred in concluding that it could exercise jurisdiction in this matter.

We conclude that this appeal is interlocutory, pursuant to Pa.R.A.P. 311. There are circumstances where an appeal on jurisdiction is permissible to the Superior Court of Pennsylvania without a final order, but in the present case the necessary requirements for such an appeal have not been satisfied. Pa.R.A.P. 311(b). The appellee did not petition for a final order on our ruling concerning jurisdiction. Pa.R.A.P. 311(b)(1). Also, in our opinion concerning exercising jurisdiction over this matter, we did not state that there was a "substantial question of jurisdiction." Pa.R.A.P. 311(b)(2) and *Donald L.F. v. Michelle C.F.*, 449 A.2d. 37 (Pa.Super. 1982). Therefore this appeal is interlocutory and should be quashed.

1

10/20/2006  12:06    8143320033                BARBARA MOUNTJOY                PAGE  05/06
10/17/2006  12:07    8143363959                LAW OFFICE                     PAGE  05
   10/17/2006 TUE 11:52  FAX 4323149 VENANGO CO JUDGES CHMBRS              003/003

We also refer the Superior Court to our opinion of September 5, 2006, which fully

states our reasoning and conclusions for our August 30, 2006 order.


                              BY THE COURT,



                              H. WILLIAM WHITE, President Judge

10/20/2006 12:06   8143320033   BARBARA MOUNTJOY   PAGE 06/06

# IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

## CIVIL ACTION - LAW

CHAD ZACHARY HOWER,
Plaintiff

v.

Civ. No. 1751-2004

NANCY SUE OBERLANDER, formerly
NANCY SUE OBERLANDER-HOWER,
Defendant

## OBJECTION TO MOTION TO CONTINUE

TO THE HONORABLE, H. WILLIAM WHITE, PRESIDENT JUDGE OF THE SAID COURT:

AND NOW comes Defendant, Nancy Sue Oberlander, by and through her attorneys, Rosen, Rosen, Bloom and Varsek, by F. Walter Bloom, III, and files the within Objection to Motion to Continue and in support thereof aver as follows:

1. The Pennsylvania Superior Court has indicated, pursuant to correspondence of October 6, 2006, that the instant appeal effected by Chad Hower is interlocutory. A copy of said correspondence is attached hereto and marked Exhibit "1".

WHEREFORE, Movant requests that this Honorable Court deny Plaintiff's Motion for Continuance.

Respectfully submitted,

ROSEN, ROSEN, BLOOM & VARSEK

By _____
F. Walter Bloom, III
Attorney for Defendant,
Nancy Sue Oberlander